IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

MAURICE ROY                                                                                              PLAINTIFF

v.                                    NO. 3:16-cv-00140 PSH

CAROLYN W. COLVIN, Acting Commissioner                                      DEFENDANT
of the Social Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff Maurice Roy ("Roy") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Roy maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] It is Roy's position that his residual functional capacity was not properly assessed. Roy maintains that the use of his right hand is limited, and the ALJ erred when he failed to so find. Roy additionally maintains that he experiences persistent, severe back pain preventing him from sitting for six hours in an eight hour workday, and the ALJ erred when he so found.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). As a part of making the assessment, the ALJ is required to evaluate the claimant's credibility regarding his subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ makes that evaluation by considering the medical evidence and evidence of the claimant's "daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." See Id. at 1218 [citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)].

A summary of the medical evidence relevant to Roy's right hand and back impairments reflects that on May 20, 2013, he was seen by Dr. Demetrius Spanos, M.D., ("Spanos") for a new patient consultation. See Transcript at 257-261. Spanos recorded Roy's medical history and noted, inter alia, the following:

> ... [Roy] is a 51-year-old ... man ... Approximately seven to eight months ago [he] developed left upper extremity limb pain along the [ulnar] distribution. He also developed numbness of the fourth and fifth digits. Three months ago [Roy] was ... seen by his physician and it was apparent that [Roy] was developing atrophy of the left hand. He denies any significant neck pain or radiating pain into the upper extremities. ... He indicates that ... his left hand has been much stronger because of the work he had done. He now indicates that his right hand is beginning to experience similar symptoms. ... He does have low back pain and has been told in the past that he has lumbar disease.

See Transcript at 257. Roy denied back pain, joint pain, joint swelling, muscle cramps, muscle weakness, stiffness, and arthritis. A physical examination revealed that he had a normal gait and station and had normal muscle strength and tone in his right upper extremity and both of his lower extremities. Spanos deemed the examination to be an "[a]bnormal neurologic exam," see Transcript at 260, and ordered testing to better evaluated Roy's condition.

MRI testing of Roy's cervical spine was performed later that same day. See Transcript at 266-267. The test results revealed "disc herniations on the foramina on the right at C4-C5 and C5-C6," "[d]isc herniation in the left neural foramen at C3-C4," and "[d]isc bulging at C6-7 with mild narrowing of both foramina." See Transcript at 266.

On June 10, 2013, Roy underwent a nerve conduction study. See Transcript at 262-263. The test results revealed "[m]oderately severe carpal tunnel syndrome of the right upper extremity," but no other evidence of polyneuropathy or entrapment neuropathy was observed. See Transcript at 262.

Roy continued to seek medical attention throughout 2013 and the first part of 2014, but it was primarily for hypertension and left hand pain caused by carpel tunnel syndrome. See Transcript at 276-277 (06/21/2013), 274-275 (09/19/2013), 272-273 (10/17/2013), 296-299 (12/30/2013), 302-304 (04/21/2014). The progress notes from the approximately five examinations contain minimal findings and observations about his right hand and back impairments. It is worth noting, though, that he typically exhibited a normal gait.

On July 28, 2014, Roy was seen by Dr. Juan Cazano, M.D., ("Cazano"). See Transcript at 311-312. Roy complained at that time of what he characterized as chronic lumbago, which he described as having worsened over the prior six weeks. A physical examination revealed that although his gait was normal, he had "minimal costovertebral angle tenderness, mild lower lumbar spinal tenderness, decreased range of motion of spine to pain, [but] no muscle spasm" in his back. See Transcript at 311. Cazano diagnosed, inter alia, lumbago and sciatica and prescribed medication.

Cazano saw Roy again on September 19, 2014, for complaints of right shoulder and arm pain. See Transcript at 309-310. Cazano recorded Roy's complaints as follows:

> Mild to moderate constant aching right arm/shoulder pain for 3 weeks, then needing to rest on his back, causing back pain that had improved with meloxicam and cyclobenzaprine; right hand numbness too. This is not related to noted recent injury, but probably over use or mal use at work (delivery).

See Transcript at 309. A physical examination revealed that Roy's gait was normal; he had some tenderness in his neck but otherwise had a normal range of motion; and he had mild tenderness in his right biceps but otherwise had a normal range of motion. Cazano diagnosed, inter alia, pain in the soft tissue of Roy's limb. Cazano prescribed medication, heat therapy, and rest. He also noted the following in his progress note: "I mentioned to [Roy] before and today that his neuromuscular condition on the left upper limb[] can overwhelm the right side upper limb, causing strain and sprain similar to today['s] complain[t]s." See Transcript at 310.

Roy saw Cazano again on October 30, 2014, for complaints of right shoulder and neck pain. See Transcript at 306-307. Roy reported that he was "resting better with Flexeril at night; helping for back pain as well," but the pain in his shoulder and neck was no better. See Transcript at 306. A physical examination revealed that Roy's gait was normal, and he had minimal decreased range of motion in his neck due to pain. With respect to Roy's extremities, Cazano observed the following: "no edema, no tremors, mild decreased range of motion to pain; left hand chronic deformities and interosseous muscle atrophy; mild right more than left shoulder tenderness." See Transcript at 306. An x-ray was taken of Roy's cervical spine, and the results of the x-ray were abnormal. They showed "mild stigmata for para cervical muscle spasm" and degenerative joint disease to "lower posterior intervertebral areas of mild to moderate level." See Transcript at 307. Cazano prescribed medication and home therapy and referred Roy to a pain management specialist.

Roy's medical records were reviewed by two state agency physicians, Dr. David Hicks, M.D., ("Hicks") and Dr. Ronald Crow, D.O. ("Crow"). See Transcript at 57-66, 68-79. Hicks and Crow both opined that Roy is capable of performing light work with occasional overhead reaching and occasional fine manipulation with his left upper extremity.

A summary of the non-medical evidence relevant to Roy's right hand and back impairments reflects that he was born on April 10, 1962. See Transcript at 35. He was fifty-two years old at the time of the administrative hearing.

Roy completed a series of documents in connection with his claim for disability insurance benefits. See Transcript at 177-184, 200-217. In the documents, he represented, inter alia, that he has difficulty lifting and reaching. Although he has difficulty using his left hand, he can use his right hand and can lift between twenty and twenty-five pounds. See Transcript at 207. He can attend to most of his personal care without difficulty, can prepare simple meals, can perform basic household chores, and is capable of performing some yard work.

The record contains a summary of Roy's FICA earnings. See Transcript at 149. The summary reflects that he worked for a number of years and had consistent, regular, and significant earnings through 2009.

Roy testified during the administrative hearing. See Transcript at 30-47. He helps his wife deliver newspapers seven days a week, 365 days a year. His responsibilities are limited, though, to driving an automobile while she throws the route. He can pick up a bundle of newspapers, which he estimated weighs approximately fifteen pounds. Roy testified that he is left-handed. He has pain and numbness in his right arm and hand that runs into his shoulder and neck. He has very little strength in his right hand and three of his fingers on his right hand "don't really even work." See Transcript at 38. He has back pain, making it difficult to walk. When the pain becomes too great, he reclines on the floor. Roy can stand for approximately four to five minutes at a time before requiring rest and can walk for "a couple of blocks without taking a break …" See Transcript at 40. He can sit for approximately twenty minutes at a time.

The ALJ found at step two of the sequential evaluation process that Roy has severe impairments in the form of "degenerative disc disease of the cervical spine at C4-5 and C5-6 with a herniated nucleus pulposus at C3-4; lumbago; sciatica; decreased left arm strength with significant atrophy in first dorsal interosseous muscle; bilateral carpal tunnel syndrome; left ulnar entrapment; hypertension; and obesity." See Transcript at 13. The ALJ assessed Roy's residual functional capacity and found that he is capable of performing the following work:

> … lift and carry 20 pounds occasionally and 10 pounds frequently with the right arm and nothing with the left arm; stand and/or walk six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and push and/or pull 20 pounds occasionally and 10 pounds frequently, except for none with the left arm. [Roy] could not perform frequent handling or finger[ing] with the dominant left hand.

See Transcript at 15. The ALJ found at step four that Roy is unable to perform his past work but found at step five that there is other work he can perform. The ALJ concluded that Roy was not disabled within the meaning of the Social Security Act.

Roy has limitations caused by right hand and back impairments. The question for the ALJ was the extent to which the limitations impact the most Roy can do despite the limitations. The evidence on that question is conflicting and is capable of more than one acceptable characterization. Substantial evidence on the record as a whole supports the ALJ's characterization of the evidence and his assessment of the limitations caused by Roy's right hand and back impairments. The Court so finds for two reasons.

First, the ALJ adequately considered the evidence relevant to Roy's right hand impairment. There is little doubt that Roy experiences pain in his right hand as a nerve conduction study confirmed the existence of carpal tunnel syndrome in the hand. The question for the ALJ was not whether Roy experiences pain in his right hand but rather the extent to which the pain affects his ability to perform work-related activities. The ALJ incorporated a limitation for Roy's right hand pain into the assessment of his residual functional capacity, i.e., Roy is limited to lifting and carrying twenty pounds occasionally and ten pounds frequently with his right arm, and the ALJ could find as he did. The ALJ's assessment is largely consistent with the medical evidence. For example, the ALJ's assessment is consistent with Spanos' observation that Roy has normal muscle strength and tone in his right upper extremity and is consistent with Cazano's observation that Roy has mild tenderness in his right shoulder and biceps. The ALJ's assessment is also largely consistent with the non-medical evidence. For example, Roy represented in a document he completed in connection with his claim for disability insurance benefits that he is capable of lifting between twenty and twenty-five pounds with his right hand, and he testified that he can lift and carry bundles of newspapers weighing approximately fifteen pounds. The ALJ's assessment is consistent with Roy's daily activities, which include attending to most of his personal care, preparing simple meals, performing basic household chores, and performing some yard work. The ALJ's assessment is also consistent with the opinions offered by Hicks and Crow, both of whom opined that Roy is capable of performing light work with some limitations.

Second, the ALJ adequately considered the evidence relevant to Roy's back impairment. The question for the ALJ was not whether Roy experiences back pain but rather the extent to which the pain affects his ability to perform work-related activities. The ALJ incorporated a limitation for Roy's back pain into the assessment of his residual functional capacity, i.e., Roy is limited to light work, and the ALJ could find as he did. The ALJ's assessment is largely consistent with the medical evidence. For example, the record contains repeated observations that Roy has a normal gait and station, Spanos observed that Roy has normal muscle strength and tone in both of his lower extremities, and Cazano noted Roy's report that medication helped ease the pain in his back. The ALJ's assessment is also largely consistent with the non-medical evidence. Roy's pain does not prevent him from lifting between twenty and twenty-five pounds and does not prevent him from lifting bundles of newspapers. The ALJ's assessment is also consistent with Roy's daily activities as outlined above and is consistent with the opinions offered by Hicks and Crow.

The governing standard in this case, i.e., substantial evidence on the record as a whole, allows for the possibility of drawing two inconsistent conclusions; it therefore embodies a zone of choice within which the ALJ may decide to grant or deny benefits without being subject to reversal. See Culbertson v. Shalala, 30 F.3d 934 (8th Cir. 1994). In this instance, the ALJ's assessment of Roy's residual functional capacity was within the zone of choice, and the ALJ could find as he did.

On the basis of the foregoing, the Court finds that there is substantial evidence on

the record as a whole to support the ALJ's findings. Roy's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 24th day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE